890 P.2d 1141

**In the Matter of the Application for Reinstatement of Michael C. BLASNIG, Bar No. 005387, Petitioner.**

No. SB–95–0014–R.

Disc. Comm. No. 94–1582.

Supreme Court of Arizona.

March 2, 1995.

Margaret H. Downie, Chief Bar Counsel, Harriet L. Turney, Bar Counsel, Phoenix, for State Bar of Arizona.

### ORDER

FELDMAN, Chief Justice.

Applicant **MICHAEL C. BLASNIG** has established to the satisfaction of the Disciplinary Commission and this Court that he is qualified for reinstatement to active bar membership; now therefore, pursuant to Rule 72 of the Rules of the Supreme Court,

IT IS ORDERED that the application of **MICHAEL C. BLASNIG** is granted. He is hereby reinstated as a member of the State Bar of Arizona, and placed on probation for a period of two years, under the terms and conditions contained in the commission report attached hereto as Exhibit A.

· IT IS FURTHER ORDERED that the reinstatement is effective as of the date of this Order.

### EXHIBIT A

### BEFORE THE DISCIPLINARY COMMISSION

### OF THE

### SUPREME COURT OF ARIZONA

Comm. No. 94–1582

In the Matter of the

Application for

Reinstatement of

**MICHAEL C. BLASNIG,**

Atty. No. 005387, Petitioner.

*DISCIPLINARY COMMISSION REPORT*

Filed Jan. 17, 1995.

This matter came before the Disciplinary Commission of the Supreme Court of Arizona on December 10, 1994, pursuant to Rule 72(e), Ariz.R.S.Ct. The Commission considered the Hearing Officer's recommendation of reinstatement with probation. No objections to the Hearing Officer's recommendation were filed.

### Decision

By a unanimous vote of the seven members considering the matter,[1] the Commission adopts the recommendation of the Hearing Officer that the petitioner, Michael C. Blasnig ("Blasnig"), be reinstated and placed on probation for a period of two years under the terms and conditions set forth below. The Commission also unanimously adopts the Hearing Officer's findings of fact and conclusions of law.

### Terms of Probation

Upon reinstatement, the Commission recommends that Blasnig be placed on probation for a period of two years, under the following terms and conditions:

---

1. Commissioners Malm and Swick did not participate in these proceedings.

1. Blasnig shall abstain from the use of all alcohol and/or illegal drugs.

2. Blasnig shall attend at least one Alcoholics Anonymous ("AA") meeting per week. At least once per month, he shall attend the lawyers' AA meeting (which currently meets Thursdays at noon at the downtown courthouse cafeteria). He will have contact with his AA sponsor at least once a month. Blasnig will provide the State Bar's Member Assistance Program ("MAP") director with the name of his sponsor. Blasnig agrees that, in the event of a relapse, the MAP director, or his or her designee, may communicate with Blasnig's sponsor.

3. Blasnig shall have a practice monitor. The practice monitor shall be an attorney who will supervise Blasnig's law practice and monitor his case load, the quality of services rendered, and his trust account. The practice monitor will agree to report to the State Bar any manifestations of relapse, unusual behavior, or conduct falling below minimum standards of the profession as set forth in the Rules of Professional Conduct. The practice monitor shall file quarterly reports with the State Bar regarding the discharge of his duties. The practice monitor may be the same individual as the sobriety monitor contemplated by term No. 4 below.

4. Blasnig shall be supervised by a sobriety monitor, who shall be responsible for reporting any breach of sobriety or other probation violations to the State Bar. The sobriety monitor shall file monthly reports with the State Bar's MAP director regarding the discharge of his duties. The sobriety monitor may be the same individual as the practice monitor contemplated by term No. 3 above.

5. Blasnig shall submit to bodily fluids tests, randomly drawn, not to exceed two per month. Said bodily fluids shall be tested for alcohol, illegal drugs, and non-prescribed drugs, and such testing shall be conducted within eight hours of contact of Blasnig. Upon request, a split sample will be furnished to Blasnig or his designee. The test results shall be furnished to the State Bar. All testing shall be at Blasnig's expense.

6. Blasnig shall pay all costs that are or will be due and owing to the State Bar as a result of Blasnig's probation prior to termination of probation.

7. If Blasnig fails to comply with any of the terms of probation, and information thereof is received by the State Bar, bar counsel shall file with the hearing committee or officer a notice of non-compliance. The hearing committee/officer shall conduct a hearing at the earliest practicable date, but in no event later than thirty days after receipt of said notice, to determine whether a condition or term of probation has been breached, and if so, to recommend an appropriate sanction therefor.

8. In the event there is an allegation that any of these terms have been breached, the burden of proof therefor shall be on the State Bar to prove non-compliance by a preponderance of the evidence.

### Underlying Facts

Blasnig was suspended from the practice of law for two years by Supreme Court order dated February 3, 1993, retroactively effective as of April 9, 1991, for violations of ER 1.2, ER 1.3, ER 1.4, ER 8.1, and Supreme Court Rule 51(h) and (i). These violations resulted from Blasnig's conduct over the one-year period from 1989 to 1990, during which he agreed to represent clients, accepted their retainers, then failed to provide diligent, if any, representation. His lack of diligence resulted in the dismissal of one client's bankruptcy, the arrest of another client, and the issuance of a warrant for the arrest of a third client. Blasnig also failed to respond to the majority of the State Bar's inquiries into these matters.

358

### Discussion of Decision

Although Blasnig could have applied for readmission to the State Bar as early as ninety days prior to April 9, 1993,[2] he did not file his application for reinstatement until August 5, 1994.

Rule 72(e), Ariz.R.S.Ct., provides that an applicant for reinstatement must demonstrate rehabilitation, compliance with all applicable discipline orders and rules, fitness to practice, and competence. Upon consideration of the testimony of Blasnig and additional witnesses, as well as the application for reinstatement, the Hearing Officer found that Blasnig proved his rehabilitation by clear and convincing evidence. The State Bar agrees with the Hearing Officer that Blasnig proved the elements required by Rule 72, and has no opposition to his reinstatement.

As Blasnig indicated in his application for reinstatement, all of his misconduct stemmed from his problem with alcohol abuse. That problem is now under control. At the hearing before the Hearing Officer, Roger Nelson, the former director of the State Bar's Member Assistance Program ("MAP"), testified about Blasnig's successful recovery. Mr. Nelson first met Blasnig in January 1991, while Blasnig was in the midst of his alcohol problems. Mr. Nelson testified that they met for a second time in November 1991, after Blasnig had successfully completed a treatment program; at that time, Blasnig was obviously a very different person than the man Mr. Nelson had seen in January of that same year. Mr. Nelson testified that Blasnig had become aware of his problems and evidenced a strong commitment to recovery. Blasnig willingly entered into a Therapeutic Contract with Mr. Nelson, which detailed the steps that Blasnig would need to undergo for recovery, including participation in a recovery program. Blasnig joined MAP's Continuing Care Group, as well as AA. He attended the Continuing Care Group for over two years, and still regularly attends AA meetings three to four times a week. Mr. Nelson stated Blasnig has made tremendous progress, and has developed all of the characteristics that point to a long-lasting recovery, including total honesty, openness, and the willingness to do anything necessary to help others with their addiction problems. Mr. Nelson also testified that, although Blasnig had an early relapse and initially expressed a great deal of denial and anger, these are very normal, even critical, steps in the recovery process, and are in no way an indication that the recovery is not successful. In fact, Mr. Nelson testified that he feels very good about Blasnig's recovery, and absolutely endorses his return to the practice of law. He believes Blasnig will be exemplary in his honesty, forthrightness, and compassion for clients' needs.

Although participants in the MAP program are guaranteed anonymity, another lawyer who experienced his own recovery alongside Blasnig was willing to waive that anonymity and testify as to the dramatic changes he has witnessed in Blasnig during his recovery. He attended the Continuing Care Group with Blasnig for nearly two years, and found his progress to be extraordinary, stating that the transformation he witnessed in Blasnig is the most profound he has ever seen, likening his before-recovery and after-recovery personalities to Jekyll and Hyde. He characterizes Blasnig's recovery as remarkable, and believes his intellect and compassion will make him a gifted lawyer. He fully supports Blasnig's reinstatement.

Blasnig also testified on his own behalf. He stated that, prior to his suspension, he simply was not emotionally or physically equipped to handle the stresses associated with a sole practice. He was candid and open about his battle with alcohol, chronicling the events involved in his recovery, including a treatment program he left prior to completion, the ensuing relapse, a successfully completed treatment program in Missouri, and his success with the MAP and AA programs. Blasnig believes this period of recovery has made him better-equipped to deal with the rigors of private practice, as his mind is now free of mind-altering substances, and the adaption of the principles of AA into his daily life has greatly improved his coping

2. Rule 71(d), Ariz.R.S.Ct.

skills. While he believes he is ready to practice law again, he does not wish to return to the same type of practice he previously had, and no longer wishes to pursue law on a full-time basis. Since April 1992, Blasnig has been teaching graduate courses in legal and ethical issues at Western International University, and would like to continue in that field. Blasnig also took the Certified Public Accountant exam in November 1994, and would like to teach and practice accounting and tax law.[3]

The State Bar also supports Blasnig's reinstatement. It urged his reinstatement at the hearing before the Commission, commending the hard work Blasnig has put in on his reinstatement and rehabilitation. The State Bar pointed out that, in addition to the evidence and testimony presented in Blasnig's favor in these proceedings, another factor, in particular, evidences his readiness to return to practice; Blasnig did not apply for reinstatement as soon as he was procedurally allowed. He could have filed his application 90 days prior to April 9, 1993; however, he waited to do so until August 1994, nearly a year and a half later. The State Bar believes that a significant sign of recovery is a lawyer's ability to recognize whether he or she is ready to take additional steps. Blasnig's postponement of his application for reinstatement is a positive indication of his recovery. Additionally, his recognition that the type of practice he formerly had contributed to his problems is another sign of a successful recovery. The State Bar characterizes Blasnig as a success story, stating that it has absolutely no reservations about his reinstatement. Further, while the State Bar approves of the two-year probationary period recommended by the Hearing Officer,[4] it sees it only as a "safety net," and notes its recommendation of reinstatement is not contingent upon the imposition of probation.

It is apparent that Blasnig is totally committed to recovery. The Hearing Officer and

the State Bar believe Blasnig is ready to resume the practice of law. Not one of the complainants from the matters that led to Blasnig's suspension now object to his reinstatement. Blasnig has fully complied with all orders and rules imposed as a result of his suspension, including having made complete restitution.[5] He has maintained his competency through work as a legal assistant from 1992 to 1993 and teaching from 1992 to the present, and has kept track of trends in the law through regular reading.

The Hearing Officer and the State Bar believe the record on appeal makes it clear that Blasnig has carried his burden of proving competence, fitness to practice, compliance with disciplinary orders and rules, and rehabilitation by clear and convincing evidence. The Commission unanimously agrees, and recommends that Blasnig be reinstated, subject to the terms and conditions of probation listed above.

/s/ Mark D. Rubin
Mark D. Rubin, Chair
Disciplinary Commission

---

3. Blasnig formerly practiced in the areas of criminal, bankruptcy, probate, and commercial corporate law.

4. The terms were actually recommended by the Commission at the time of Blasnig's suspension.

5. One client to whom Blasnig was ordered to make restitution was unreachable. In lieu of actual payment of this restitution, the State Bar accepted a letter from Blasnig avowing that he owes this client $500 and that amount will be remitted to her, when and if she can be located.